UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PET LIFE, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>KAS PET, LLC and DOES 1-10, inclusive,<br><br>   Defendants. | Civil Action No. 1:23-cv-4882<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff PET LIFE, LLC, a New Jersey limited liability company ("Plaintiff"), by and through this Complaint against Defendants, KAS PET, LLC, a New York limited liability company ("KAS") and DOES 1 through 10, inclusive, (each a "Defendant" and collectively, "Defendants"), alleges to the Court as follows:

### NATURE OF THE ACTION

1. This is an action for infringement of a registered trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); trademark infringement and unfair competition in violation of the common law of the State of New York; and trademark dilution under N.Y. Gen. Bus. Law § 360.l.

2. Plaintiff owns all rights, title and interest in and to the trademark PET LIFE, which is federally registered in standard characters and in stylized form, for use in connection with a wide range of pet products, which it has used in commerce for more than 15 years. Plaintiff sells its PET LIFE products through various retail stores such as Target and Walmart,

and its mark and associated products have become well known in the minds of consumers. Long after Plaintiff had established rights in its PET LIFE mark, and with full knowledge of Plaintiff's prior rights in and to the same, Defendants have willfully and intentionally chosen to unfairly and directly compete with Plaintiff by offering similar pet products in connection with the PET LIFE mark and/or marks confusingly similar to same, including PET LIFE UNLIMITED, without Plaintiff's authorization or consent, causing consumer confusion and deception, as well as damage to Plaintiff. Demands having been made on Defendants to no avail, Plaintiff must now bring the instant action to protect its valuable intellectual property rights.

## PARTIES

3. Plaintiff, PET LIFE, LLC ("Plaintiff"), is a New Jersey limited liability company, having its principal place of business located at 180 Northfield Avenue, Edison, New Jersey 08837.

4. Upon information and belief, Defendant KAS PET, LLC ("Defendant" or "KAS") is a Delaware limited liability company, having its principal place of business located at 1025 Old Country Road, Suite 314, Westbury, New York, 11590.

5. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will seek to amend this Complaint to allege such names and capacities as soon as they are ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously-named defendants is in some manner responsible, liable and/or obligated to Plaintiff in connection with the acts alleged herein.

6. Defendants sued herein as KAS PET, LLC, and DOES 1 through 10, inclusive, shall collectively be referred to herein as "Defendants."

7.      Plaintiff is informed and believes, and thereon alleges that at all times mentioned herein, each of the Defendants shared a unity of interest.  Specifically, each of the Defendants are the alter ego of each other, in that each is not only influenced and governed by each other, but there exists such a unity of interest between them that the individuality and separateness of each of them have ceased, and the facts are such that an adherence to the fiction of the separate existence of each of them would, under the particular circumstances, sanction a fraud or promote injustice.

8.      Upon information and belief, Defendants have directed ongoing and substantial commercial activities within the State of New York, including without limitation the Eastern District of New York.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a)-(b), because this action arises under the laws of the United States – namely, the Lanham Act.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) of the related state law claims that are factually interdependent with the federal law claims, and that arise from the same case or controversy.

10.     Upon information and belief, this Court has personal jurisdiction over Defendants in that they transact substantial business in the State of New York.  By way of example only, Defendants are transacting business that is the subject of this Complaint in the State of New York, including within this judicial district.

11.     Upon information and belief, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants have significant contacts within this judicial district.

12. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the facts giving rise to the acts or omissions alleged herein took place in this judicial district.

13. Venue is also proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(3) and 1391(c)(2) because Defendants are individuals and business entities subject to this Court's personal jurisdiction.

## FACTUAL BACKGROUND

**A.      Plaintiff's PET LIFE Mark**

14. Plaintiff is the owner of the distinctive PET LIFE trademark, which it has used in interstate commerce since at least as early as 2008 in connection with the sale of a wide range of pet products, currently including but not limited to pet shampoo, pet wipes, pet deodorizers, pet dietary supplements, disposable training pads, pet waste bags, bark control devices, pet scratching posts, pet grooming products, pet toys, pet beds, pet carriers, pet bowls, pet harness collars and leashes, and pet apparel.  Plaintiff also uses its PET LIFE mark as its trade name and in connection with providing online retail services for a wide range of pet products, including those listed above.

15. Plaintiff sells its pet products nationwide through various retailers, including but not limited to Target, Walmart, Petco, PetSmart, Pet Supplies Plus and numerous independent pet specialty brick and mortar retailers.  Plaintiff's products are also sold online at more than 30 of the largest online retailers, including but not limited to Amazon, Chewy.com, Zulily.com, Groupon.com, Nordstrom Rack, Woot.com, Homedepot.com, Tractorsupply.com and on its website at https://www.petlife.com and https://www.shop.petlife.com.

16. Plaintiff owns federal trademark registrations for its PET LIFE mark, two of which are in standard characters (which protects the mark in all forms) and one of which is in a particular stylized form, as detailed below:[1]

| Mark | Reg. No. | Goods/Services |
|---|---|---|
| (Pet Life stylized logo) | 5533692 | "Dispensers for dog waste bags, fixed, of metal," in International Class 006; "Bark control devices for training dogs; Electric bark control dog collars," in International Class 009; "Disposable house training pads for pets;" in International Class 016; "Dog apparel; Dog clothing; Dog coats; Dog collars; Dog collars and leads; Dog leashes; Dog shoes; Coats for cats; Collars for cats," in International Class 018; Cat scratching pads; Cat scratching posts; Dog beds; Dog kennels," and in International Class 020, for "Cat toys," in International Class 028. |
| PET LIFE | 6898432 | "Pet shampoo; Wipes impregnated with cleansing preparations for pets," in International Class 003; "Decorative pet water fountains," in International Class 011; "Disposable pet house training pads; Plastic bags for pet waste disposal," in International Class 016; "Pet clothing; Pet clothing, namely, pet accessories in the nature of pet shoes and pet bandanas; pet collars; pet leashes in the nature of animal leashes; pet harnesses in the nature of harnesses for animals; Pet training products, namely, pet restraining devices consisting of leashes, collars, harnesses; Animal carriers," in International Class 018; "Pet carriers in the nature of pet crates; pet crates; Beds for household pets; pet scratching posts, namely, cat scratching posts," in International Class 020; "Pet grooming products, namely, pet brushes and combs; pet bowls and non-mechanized and automatic pet feeders; Pet water fountains being dishes," in International Class 021; "Pet toys," in International Class 028; and "Online retail store services featuring pet supplies, pet products, pet apparel, pet toys and accessories," in International Class 035. |
| PET LIFE | 7056353 | "Pet deodorizers; pet stain removers," in International Class 003; "Pet vitamins and dietary supplements for pets; Flea and tick treatment preparations for pets in the nature of pet flea and tick collars," in International Class 005; "Bird accessories, namely, perches for bird cages, rings for identifying birds; small animal cages in the nature of bird cages for domestic birds; aquariums; aquarium supplies, namely, fish nets and artificial landscapes," in International Class 021; and "small animal litter; Small animal bedding made of recycled paper," in International Class 031. |

---

[1] Plaintiff just recently learned that a trademark assignment agreement was inadvertently electronically executed by a third party, not affiliated with Plaintiff, on behalf of Plaintiff, and recorded with the U.S. Patent and Trademark Office ("USPTO") against Registration Nos. 6898432 and 5533692. As such, USPTO records currently incorrectly reflect that an unrelated third party is the owner of Plaintiff's two aforementioned registrations. Plaintiff has brought this to the third party's attention, and it has confirmed that it is taking steps to correct USPTO records as soon as possible to reflect that Plaintiff always has been, and still is, the owner of its marks.

17. Plaintiff's above registrations are valid and subsisting, and provide prima facie evidence of Plaintiff's ownership of and exclusive right to use the PET LIFE mark in the United States in connection with those goods and services identified in the registration certificates, as well as any sufficiently related goods and services.

18. Plaintiff's PET LIFE products have enjoyed substantial commercial success and popularity nationwide, including within this judicial district.

19. Plaintiff's PET LIFE mark is inherently distinctive.

20. Plaintiff has spent substantial time, effort, and money advertising and promoting its PET LIFE mark throughout the United States.

21. By virtue of Plaintiff's continuous and exclusive use in the United States of the PET LIFE mark in connection with the sale of a wide range of pet supplies, for more than 15 years, the PET LIFE mark has further acquired distinctiveness. That is, the public has come to associate the PET LIFE mark with Plaintiff's high-quality goods, consequently allowing Plaintiff to build a valuable reputation in connection with its PET LIFE mark.

22. Plaintiff has expended considerable time, effort and money in advertising and otherwise promoting its pet products, and encouraging the public and trade to recognize its PET LIFE mark. As such, Plaintiff has acquired extensive goodwill in its PET LIFE mark in connection with a variety of pet products.

23. As a result of the longstanding, continuous and extensive use of Plaintiff's PET LIFE mark, the PET LIFE mark has become well known in the minds of consumers for such pet products.

24. Plaintiff's PET LIFE mark became well known in connection with Plaintiff's products prior to the time that Defendants began engaging in the misconduct alleged herein.

B.      **Defendants' Infringing Activities**

25.     Long after Plaintiff had established rights to its PET LIFE mark, Defendants began using a confusingly similar mark, in connection with their own pet products.

26.     More specifically, Defendants are using the mark PET LIFE UNLIMITED, including but not limited to in the stylized form shown below, which appears on their pet products and website at https://www.mypetlife.co/.



27.     Upon information and belief, Defendants are also using PET LIFE alone, without the word "unlimited", to refer to themselves and their pet products.

28.     Defendants have entered the same market as Plaintiff, and promote and sell their own competing pet products using the PET LIFE mark, including as PET LIFE UNLIMITED. Defendants are selling their competing products online and through the same retailers as Plaintiff, including Target and Walmart. Screenshots reflecting the sale of both Plaintiff's and Defendants' products offered through Target and Walmart are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

29.     Defendants' PET LIFE UNLIMITED mark is not only confusingly similar, but virtually identical, in appearance and commercial impression, to Plaintiff's PET LIFE mark. Plaintiff's PET LIFE mark is fully incorporated in, and is the most dominant part of, the PET LIFE UNLIMITED mark. This is particularly true given how, in the stylized version of Defendants' PET LIFE UNLIMITED mark, the word "unlimited" appears inconspicuously in small font, barely

noticeable. Indeed, in many images of Defendant KAS's use of the PET LIFE UNLIMITED mark on its website, the word "unlimited" is not even legible.

30. Defendants' inclusion of the descriptive word "unlimited," as shown above, does not distinguish Defendants' mark from Plaintiff's mark, and Defendants' mark is so similar to Plaintiff's PET LIFE mark that consumers who hear or see it will instantly think of Plaintiff's PET LIFE mark.

31. Further, upon information and belief, Defendants are referring to themselves as "Pet Life", further misleading consumers to believe that they are affiliated with Plaintiff. While KAS uses PET LIFE UNLIMITED in stylized form on its website, this website also references "Pet Life" throughout without using "unlimited" or any other distinction from Plaintiff's PET LIFE mark, as shown in the screenshot attached hereto as **Exhibit C**. Moreover, a Google search of "Pet Life" results in Defendants' website with the heading "Pet Life Official Site," reflecting Defendants' attempt to trade off of Plaintiff's mark and trade name for commercial profit, as shown in the screenshot attached hereto as **Exhibit D**.

32. Upon information and belief, Defendants have also purchased Plaintiff's PET LIFE mark as a search engine advertising keyword, for the specific purpose of diverting consumers looking for Plaintiff and its PET LIFE products to Defendants' own competing products.

33. Upon information and belief, Defendants' pet products do not espouse the same degree of high-quality goods as Plaintiff's goods provided under the PET LIFE mark.

34. Plaintiff has used its PET LIFE mark on and in connection with pet products and supplies for many years, and long before Defendants' adoption of their own mark incorporating Plaintiff's PET LIFE mark.

8

35. Plaintiff is informed and believes and thereupon alleges that Defendants have sought to improperly capitalize on Plaintiff's investment in the creation and positive reputation of the PET LIFE mark.

36. Upon information and belief, Defendants chose their mark with the intent and purpose of trading off of the goodwill of Plaintiff's PET LIFE mark, and to mislead, confuse and deceive consumers as to the source, sponsorship, affiliation and/or endorsement of Defendants' goods.

37. As a result, not only is there likelihood of confusion, but Plaintiff's reputation is being tarnished, and the value and distinctiveness of Plaintiff's PET LIFE mark are being diminished and blurred.

38. Plaintiff is informed and believes and thereupon alleges that, Defendants have all assisted, cooperated with and conspired with one another to create, acquire, purchase, advertise, promote, distribute and/or sell goods in connection with the PET LIFE mark, including as PET LIFE UNLIMITED, without Plaintiff's authorization.

39. Upon learning of Defendants' infringing activities, Plaintiff sent a cease-and-desist letter to Defendant KAS on April 26, 2023, demanding that Defendants cease and desist all further uses of Plaintiff's PET LIFE mark, and/or any other marks or terms that are confusingly similar to Plaintiff's PET LIFE mark, in connection with pet products.

40. Although Defendants have been made aware of Plaintiff's prior trademark rights, Defendants are still using Plaintiff's PET LIFE mark, including as part of PET LIFE UNLIMITED, in connection with their directly competing pet products nationwide, including within this judicial district.

41. Plaintiff must now bring this action for trademark infringement, trademark dilution, false designation of origin, cybersquatting and unfair competition under federal and state law, arising from Defendants' unlawful uses of Plaintiff's PET LIFE mark and confusingly similar variants.

42. Plaintiff is informed and believes and thereupon alleges that, absent the intervention of this Court, Defendants' illegal actions will continue, and Plaintiff and consumers will continue to be harmed.

## COUNT ONE
### (Federal Trademark Infringement - 15 U.S.C. § 1114)
### (Against All Defendants)

43. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the paragraphs above.

44. The federally registered PET LIFE mark, both in standard characters and stylized form, and the goodwill of the business associated therewith are of great and incalculable value, distinctive and have become associated in the public mind with goods of the highest quality and reputation with Plaintiff as the source of origin.

45. Upon information and belief, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in the PET LIFE marks in connection with pet products, Defendants have used and are using a confusingly similar PET LIFE mark, including PET LIFE UNLIMITED, in connection with their own directly competing pet products sold in the United States.

46. Upon information and belief, Defendants' unauthorized PET LIFE UNLIMITED pet products are marketed to the same consumers and in direct competition with Plaintiff's own PET LIFE branded pet products in the United States.

47. Defendants' use in commerce of the confusingly similar PET LIFE UNLIMITED mark is likely to deceive the public into believing that Defendants' products are authorized by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

48. Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

49. If Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation, for which monetary damages cannot provide adequate compensation. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

50. Plaintiff is further entitled to recover damages in an amount to be determined at trial, including actual damages and profits made by Defendants on sales of its unauthorized goods, and the costs of this action, pursuant to 15 U.S.C. § 1117.

51. Furthermore, the foregoing actions of Defendants were undertaken willfully and with the intention to cause confusion, mistake, or deception, thus making this case exceptional under the Lanham Act and entitling Plaintiff to recover enhanced damages and reasonable attorneys' fees.

## COUNT TWO
### (False Designation of Origin and Unfair Competition – 15 U.S.C. § 1125(a))
### (Against All Defendants)

52. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the paragraphs above.

53. Defendants are using Plaintiff's PET LIFE mark and/or marks confusingly similar thereto, including PET LIFE UNLIMITED, without authorization from Plaintiff, in connection

11

with the sale of pet products in the United States, that are of the same general nature and type as those that Plaintiff has long provided in connection with its own registered PET LIFE mark.

54. Defendants' unauthorized uses of the PET LIFE mark are likely to cause confusion to the general purchasing public.

55. By misappropriating and using the PET LIFE mark, Defendants misrepresent and falsely describe to the general public the nature, origin and source of their goods and create a likelihood of confusion by ultimate purchasers as to the source, sponsorship, affiliation and/or endorsement of such goods.

56. Defendants' unlawful and unauthorized sale of pet products in the United States, in connection with the PET LIFE mark, create express and implied misrepresentations that those services are authorized or approved for sale by Plaintiff, all to Defendants' profit and Plaintiff's great damage and injury.

57. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15. U.S.C. § 1125(a), in that Defendants' uses of the PET LIFE mark, in connection with Defendants' sale of goods, in interstate commerce constitutes trademark infringement, false designation of origin, and unfair competition.

58. If Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its business, goodwill and reputation, for which monetary damages cannot provide adequate compensation.

59. As a result of Defendants' activities, Plaintiff has been damaged in an amount to be determined at trial, and including but not limited to, the costs of this action.

60.     Furthermore, Defendants' continued, willful violation of Plaintiff's rights with full knowledge of said rights entitles Plaintiff to recover enhanced damages and reasonable attorneys' fees.

**COUNT THREE**
**(Federal Anticybersquatting Consumer Protection Act – 15 U.S.C. § 1125(d))**
**(Against All Defendants)**

61.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the paragraphs above.

62.     Upon information and belief, long after Plaintiff had established trademark rights to the PET LIFE mark as discussed above, Defendants registered the domain name MYPETLIFE.CO, which fully incorporates Plaintiff's PET LIFE mark.

63.     Upon information and belief, at the time that Defendants registered the MYPETLIFE.CO domain name, they had a bad faith intent to profit from the confusingly similar use of Plaintiff's PET LIFE mark.

64.     Defendants have registered and are using the MYPETLIFE.CO domain name, which fully incorporates and is confusingly similar to Plaintiff's PET LIFE mark (in which Plaintiff has prior and superior rights in connection with pet products), in connection with promoting their pet products throughout the United States, including in this judicial district.

65.     Defendants, through the MYPETLIFE.CO domain name, offer the same types of goods as Plaintiff, thus further revealing that Defendants had (at the time they registered the MYPETLIFE.CO domain name) and continue to have a bad faith intention to make commercial gains from that domain name and to divert actual or potential consumers away from Plaintiff and towards' Defendants' goods.

66. Defendants' intentional misconduct is further demonstrated by their purchase of Plaintiff's PET LIFE mark as a search engine advertising keyword as discussed above, for the specific purpose of diverting consumers looking for Plaintiff and its PET LIFE products to Defendants' own competing products.

67. Defendants intended to divert actual and potential customers away from Plaintiff for Defendants' own commercial gains, with actual knowledge that there is a likelihood of confusion.

68. Plaintiff's PET LIFE mark was distinctive at the time Defendants registered and/or acquired the MYPETLIFE.CO domain name, as evidenced by the fact that Plaintiff has used the PET LIFE mark in commerce since at least 2008 and obtained a U.S. Trademark Registration for the mark PET LIFE in connection with pet products prior to Defendants' registering the domain name on or around July 10, 2021.

69. Defendants' actions constitute cybersquatting pursuant to 15 U.S.C. § 1125(d).

70. As a result of Defendants' cybersquatting, Plaintiff has suffered detriment to its business, goodwill, reputation and profits, all to its damage in an amount yet to be determined, and subject to a treble damages award pursuant to 15 U.S.C. § 1117.

71. Defendants have derived and, unless enjoined, will continue to derive unlawful gains and profits as a result of their acts.

72. As a result of Defendants' willful misconduct, Plaintiff is entitled to recover statutory damages in an amount that is not less than $1,000 and not more than $100,000, for their registration and use of the MYPETLIFE.CO domain name and for any other domain name which Defendants' may own or control which also includes Plaintiff's PET LIFE mark.

73. This is an exceptional case under the Lanham Act, and thus Plaintiff is also entitled to recover its attorneys' fees.

74. Plaintiff is entitled to recover the MYPETLIFE.CO domain name from Defendants. Alternatively, the Court may order Defendants to forfeit the domain name or order that the domain name registration be cancelled.

75. If the aforesaid acts are permitted to continue, further loss and damage and irreparable injury will be sustained by Plaintiff, for which Plaintiff has no adequate remedy at law.

## COUNT FOUR
### (Trademark Dilution under N.Y. Gen. Bus. Law § 360-l)
### (Against All Defendants)

76. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the paragraphs above.

77. Plaintiff's PET LIFE mark is strong, distinctive, and well-known and has garnered recognition throughout the United States, including in New York.

78. Defendants' PET LIFE UNLIMITED mark fully incorporates, is virtually identical and certainly confusingly similar to Plaintiff's PET LIFE mark.

79. Defendants' use of PET LIFE UNLIMITED for Defendants' goods actually dilutes and/or is likely to dilute the distinctive quality of Plaintiff's PET LIFE mark.

80. Defendants' actions as described above cause injury to the business reputation of Plaintiff and dilute the distinctive quality of Plaintiff's PET LIFE mark in violation of N.Y. General Business Law §360-l.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

(a) For actual and compensatory damages in an amount to be proved at trial;

(b) For enhanced damages representing three times Plaintiff's actual damages;

(c) For disgorgement of Defendants' profits;

(d) For statutory damages, including enhanced damages based on Defendants' willful violation of Plaintiff's rights;

(e) For an order to transfer the MYPETLIFE.CO domain name, as well as any other domain name that Defendants may own or control that includes the PET LIFE mark, to Plaintiff;

(f) For reasonable attorneys' fees and costs;

(g) For injunctive and equitable relief; and/or

(h) For all such further relief as the Court finds just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues presented by this Complaint which are properly triable to a jury.

Dated: June 29, 2023

Respectfully submitted,

COWAN LIEBOWITZ & LATMAN, P.C.

By: _____
Richard S. Mandel (rsm@cll.com)
Dasha Chestukhin (dxc@cll.com)
West 47th Street, 21st Floor
New York, New York 10036
Tel.: (212) 790-9200

LEWITT HACKMAN
Jeffrey A. Kobulnick (pro hac vice forthcoming)
Heidy A. Nurinda (pro hac vice forthcoming)
16633 Ventura Boulevard, 11th Floor
Encino, California 91436
Tel.: (818) 990-2120
E-mail:jkobulnick@lewitthackman.com;
hnurinda@lewitthackman.com

*Attorneys for Plaintiff PET LIFE, LLC*