UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

PET LIFE, LLC,

      Plaintiff,

 -against-

KAS PET, LLC and DOES 1-10 inclusive,

      Defendants.
---------------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**

Civil Action No.
23-CV-4882 (GRB) (SIL)

**APPEARANCES:**

Richard S. Mandel
Cowan Liebowitz & Latman
Attorneys for Plaintiff
114 West 47th St
New York, NY 10036

Jonas Noah Hagey
BraunHagey & Borden LLP
Attorneys for Defendants
118 West 22nd St
12th Floor
New York, NY 10011

**GARY R. BROWN, United States District Judge:**

  While marketing pet supplies to the public under the name "Pet Life," plaintiff and defendants attempt to portray an air of geniality. On its website, plaintiff vows that it is "dedicated to providing the most meaningful and innovative pet supplies to improve the daily lives of our pet's [sic]."[1] Defendants endeavor to lure consumers with its "Fur-ever Young Adoption Event" featuring photos of actress and model Christie Brinkley and "a whole lot of

---
[1] *About Pet Life*, PET LIFE, https*://www.petlife.com/about-us* (last visited September 1, 2023).

1

adorable senior pups."[2] Unfortunately, in this arena, both parties have abandoned all pretense of conviviality, opting instead to "Cry 'Havoc!' and let slip the dogs of war!"[3] And like any ruthless battle, the result is a bloody mess.

In this seemingly simple trademark action, plaintiff seeks injunctive relief and a host of other remedies, while defendants counterclaim for similar relief. In the hands of misguided litigants and overly aggressive counsel, the dispute has assumed titanic proportions "full of sound and fury, signifying nothing."[4] Amid a barrage of bloated filings and dubious procedural maneuvers by both sides, plaintiff belatedly seeks a preliminary injunction against defendants. Because of plaintiff's delay in filing, failure to effectively demonstrate irreparable harm and the anemic nature of the mark,[5] the motion for a preliminary injunction is readily denied. Moreover, the Court dismisses defendants' second counterclaim as frivolous.

**Background**

*The Trademark Filings*

The history of trademark filings by the parties bears some relevance to this action, and is summarized in the table below:

| Party | Trademark No. | Nature of Trademark | Registration Date | First Use Dates (per USPTO) | Citation |
|---|---|---|---|---|---|
| Plaintiff | 5,533,692 | Graphic Mark | 8/7/2018 | 2009-10 | Docket Entry ("DE") 10-3 |
| Defendant | 5,948,054 | Words: Pet Life | 12/31/2019 | 2018 | DE 24-10 |

---

[2] *Fur-ever Young Adoption Event*, PET LIFE UNLIMITED, https://www mypetlife.co/seniordogadoption/ (last visited September 1, 2023).
[3] William Shakespeare, *Julius Caesar* (III.i.273).
[4] William Shakespeare, *Macbeth* (V.v.26).
[5] For similar reasons, there may be little hope for the balance of the claims made by either party.

2

| | | | | | |
|---|---|---|---|---|---|
| Defendant | 97387766 (application) | Graphic Mark pet life UNLIMITED | 5/28/2022 | n/a | DE 24-11 |
| Defendant | 97387762 (application) | Words: Pet Life | 4/28/2022 | n/a | DE 24-12 |
| Plaintiff | 6,898,432 | Words: Pet Life | 11/15/2022 | 2009-2019 | DE 10-4 |
| Plaintiff | 7,056,353 | Words: Pet Life | 5/16/23 | 2021-2023 | DE 10-5 |

*Litigation of this Action*

According to the complaint, filed on June 29, 2023, plaintiff Pet Life, LLC brings "an action for infringement of a registered trademark in violation of Section 32 of the Lanham Act." Docket Entry ("DE") 1 at ¶ 1. The plaintiff claims to sell, under the name Pet Life, "a wide range of pet products, [such as] pet shampoo, pet wipes, pet deodorizers, pet dietary supplements, disposable training pads, pet waste bags, bark control devices, pet scratching posts, pet grooming products, pet toys, pet beds, pet carriers, pet bowls, pet harness collars and leashes, and pet apparel." *Id.* ¶ 14.[6] The complaint alleges that plaintiff owns three relevant federal trademark registrations, one of which protects a stylized logo, while the other two apply to "Pet Life" using standard characters. *Id.* ¶ 16. Notably, the complaint omits the dates associated with these registrations. *See id.*

Allegedly, "[l]ong after Plaintiff had established rights to its PET LIFE mark, Defendants began using a confusingly similar mark," to wit: Pet Life Unlimited, sometimes omitting the word "unlimited." *Id.* ¶¶ 25-27. Plaintiff claims that "Defendants' pet products do not espouse the same degree of high-quality goods as Plaintiff's goods provided under the PET LIFE mark."

---

[6] Astonishingly, and not irrelevantly, this allegation uses the word "pet" fourteen times.

3

*Id.* ¶ 33. Plaintiff further alleges that it sent a cease-and-desist letter to defendants on April 23, 2023, which went unheeded. *Id.* ¶ 39. Based on these scant allegations, plaintiff purports to bring causes of action sounding in federal trademark infringement, false designation of origin, "anticybersquatting" (emanating from defendants' registration of mypetlife.com domain name), and trademark dilution under New York law.

About three weeks after filing its complaint, plaintiff filed a motion for an Order to Show Cause seeking a broad preliminary injunction against defendants. DE 10. The Court promptly scheduled a conference with counsel. *See* DE 16. The motion did not seek a temporary restraining order, and plaintiff declined the Court's invitation for an evidentiary hearing. DE 16 at 5. At that hearing, held in early July, counsel for plaintiff summarized its argument regarding irreparable harm: plaintiff was approaching its "[busy] season" which begins in September. *Id.* at 25. Counsel also acknowledged that defendants have not been using plaintiff's stylized logo mark, subject of its earliest trademark. *Id.* at 11. Counsel for defendants argued for pre-decisional discovery because "if there was a hearing, there would be no way to impeach any of their witnesses," *id*. at 18, even though plaintiff had waived a hearing.[7] Meanwhile, plaintiff's counsel responded that it was entitled to relief simply because "the declarations are true. They state facts." *Id.* at 21. The parties completed briefing plaintiff's motion for preliminary relief with filings, exhibits, responses, replies and sur-replies comprising thousands of pages that fill eight large binders.[8]

---

[7] Though the Court largely rejected defendants' requests for discovery, it did permit the service of an interrogatory as to when plaintiff first learned of defendants' use of the Pet Life name. *See* DE 16 at 25.

[8] In yet another notable melee, defendants accused plaintiff of relying upon an unsigned supplemental declaration by its principal, urging the Court to strike the submission as a result. DE 37. Plaintiff replied with a "Notice of Errata" representing that the Declaration had been signed but an unsigned version had accidentally been filed by the Court. DE 39. So, there's that.

And still, battle raged.[9] After exhaustively briefing the motion, defendants submitted a supplemental filing containing a 2018 arbitration decision concerning the *petlife.com* website. DE 30-2.[10] That decision found that a registrant had registered the domain name in 2003, long before plaintiff began using the trademark at issue and rejected plaintiff's claim to the domain name, finding that plaintiff had engaged in "reverse domain name hijacking." *Id.* Plaintiff's opposition to this filing constitutes mainly procedural grousing. *See* DE 34. Clearly, the decision bears some relevance to plaintiff's claim, though its import seems to have been exaggerated by defendant.

Having no legitimate procedural mechanism to further argue against plaintiff's application for preliminary relief, defendants essentially invented one: counsel created a submission entitled "Objections to Evidence in Support of Plaintiff's Motion for a Preliminary Injunction," lodging nearly three dozen "objections," including "relevance," "authenticity," "lack of personal knowledge" and "misleading description," to exhibits and assertions contained in plaintiff's reply documents. *See* DE 41. As the deployment of an imaginary advocacy device cannot go unaddressed, plaintiff filed a 13-page "Response to Objections." *See* DE 42.[11]

---

[9] On this motion, counsel has submitted a series of emails between and among the attorneys litigating this matter. These exchanges are littered with *faux* courtesies such as "thank you for tacitly confirming your client's new-found position" and false allegations that material would "only be presented to the Court for an improper purpose, namely to harass and attack our client personally." DE 30-at 3-4. While that which counsel attempts to demonstrate by sharing this mud-slinging fest remains elusive, the proffered threads establish one issue beyond doubt: both sets of counsel have litigated this matter in flagrant violation of Court rules and orders. *See* Local Civil Rule 26.4 ("Counsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process and to be courteous in their dealings with each other"); *Fields v. Bayerische Motoren Werke Aktiengesellschaft*, 594 F. Supp. 3d 530, 532 (E.D.N.Y. 2022) ("Unfortunately for the parties, the Court, and the interests of justice, the attorneys involved in this dispute have failed to embrace, both here and elsewhere, the notion of cooperation among counsel and adherence to court directives in conducting litigation."). Counsel are cautioned that continued behavior of this nature will subject them, and their clients, to sanctions.

[10] Curiously, that decision states that plaintiff "engages in the business of providing educational services, namely, conducting seminars, conferences, exhibitions, and conventions in the field of animal welfare and education." DE 30-2 at 4.

[11] Despite an indescribably high cost-to-benefit ratio, the undersigned has endeavored to consider all of the submissions, even those entirely unsanctioned by law.

Defendants, meanwhile, answered the complaint, adding counterclaims seeking "to cancel PLLLC's trademark registrations and stop PLLLC from menacing KAS Pet's thriving business with baseless claims." DE 22 at 11. Specifically, defendants seek cancellation of plaintiff's trademark registrations based on fraudulent representations, and a declaratory judgment that plaintiff has no right its claimed trademarks. *Id.* at 17. That second counterclaim is apparently based upon an alleged assignment of plaintiff's trademark rights to a third party, a notion entirely predicated upon an erroneous filing in the U.S. Patent and Trademark Office, *which plaintiff made clear in its complaint. See* DE 1 at 5. Rather than resolve this matter, counsel for plaintiff began the process of filing a formal motion to dismiss. *See* DE 36. Defendants, for their part, retained the unbridled temerity to oppose dismissal of this baseless counterclaim, attempting to conjure up different grounds to support it. *See* DE 43.

Surveying this procedural history proves daunting. While courts often resort to Latin phrases to help articulate the inexpressible, here a Yiddish expression comes to mind: *oy veh*.[12]

This opinion follows.

**DISCUSSION**

*Preliminary Injunction Standard*

As this Court has previously observed:

> A party seeking preliminary injunctive relief must demonstrate:
>
> (1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction. *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011). The Court has "wide discretion in determining whether to grant a preliminary injunction," as it is "one of the most drastic tools in the

---

[12] An abbreviation of *oy vey iz mir*, which roughly translates to "oh, woe is me," and defines a sense of frustration or exasperation when confronted with outlandish behavior.

arsenal of judicial remedies." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).

*Cablevision Sys. Corp. v. Verizon New York Inc.*, 119 F. Supp. 3d 39, 49 (E.D.N.Y. 2015). For at least three important reasons, plaintiff's motion for a preliminary injunction utterly fails.

*Delay*

Unexplained delay in the filing of an application for preliminary relief can undermine a showing of irreparable harm. *Christmas House USA, Inc. v. Christmasland Experience LLC*, No. 22-CV-7691 (GRB), 2022 WL 17852025, at *2 (E.D.N.Y. Dec. 22, 2022) (finding that the delay of just over a month, in a seasonal business, supported denial of preliminary injunction); *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144–45 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction.").

Exactly when plaintiff learned of defendants' use of Pet Life is unclear. In its motion papers, plaintiff's principal represents "[t]o the best of Pet Life's recollection,"[13] it first learned of defendants' use of the mark in March 2023. DE 25-13 at 3. That defendant KAS Pet, LLC registered a federal trademark for the use of these words in connection with pet supplies in 2019 makes it difficult to believe that the plaintiff—which actively prosecuted several related trademark applications both before and after this filing—remained unaware of defendants' use of the mark until recently. *See Iancu v. Brunetti*, 139 S. Ct. 2294, 2297–98 (2019) ("[R]egistration serves as 'constructive notice of the registrant's claim of ownership'"). Even accepting plaintiff's assertion that it first learned of the complained-of uses of Pet Life in March 2023, plaintiff failed to seek injunctive relief for several months, finally filing this application in July. If defendants' use of Pet Life represented the existential threat plaintiff now describes, its counsel would have

---

[13] Notably, in arguing about this document, plaintiff's counsel omits this curious qualifier. *See* DE 31 at 14.

been inspired to come to court sooner.

This delay thus weighs against the showing of irreparable harm and forms an independent basis to deny injunctive relief. *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("[D]elay alone may justify denial of a preliminary injunction for trademark infringement"). Even absent this delay, plaintiff's showing of irreparable harm fails on its own.

*Irreparable Injury*

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 672 (2d Cir. 2023) (*purgandum*[14]). Plaintiff argues for a presumption of irreparable harm based upon its status as a "trademark plaintiff." DE 10-1. While plaintiff cites 15 U.S.C. § 1116(a)—which recently reinstated the presumption of irreparable where plaintiff establishes a likelihood of success on the merits, that section appears inapplicable for several reasons. First, in this case, defendants have an earlier-registered trademark for the words "Pet Life," rendering it questionable as to whether the presumption could be applicable here, or whether this fact rebuts the presumption.[15] Second, as discussed below, plaintiff has failed to establish a likelihood of success at this juncture, rendering the presumption inapplicable.

Aside from its misplaced reliance upon the statutory presumption, plaintiff's showing of

---

[14] *See Farmers Property and Casualty Ins. Co. v. Fallon*, No. 21-CV-6022 (GRB)(ARL), 2023 WL 4975977, at *3 n.6 (E.D.N.Y. Aug. 3, 2023) (discussing use of "*purgandum*" to indicate the removal of superfluous items for the ease of reading).

[15] In their papers, defendants entirely dodge the question of the presumption of irreparable harm. Interestingly, in the wake of the Supreme Court decisions in *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) and *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008), questions arose as to whether the presumption of irreparable injury in a trademark action remained viable. *See, e.g.*, *Vox Amplification Ltd. v. Meussdorffer*, No. CV 13-4922 (ADS)(GRB), 2014 WL 558866, at *5, *n adopted by*, 50 F. Supp. 3d 355 (E.D.N.Y. 2014) (presumption of irreparable harm in a trademark action "no longer appears to be good law"). However, a 2020 amendment of 15 U.S.C. § 1116(a) appears to indicate that this "'departure from the long tradition of equity practice' was intended by Congress." *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010); *see* 15 U.S.C. § 1116(a), *amended by* Trademark Modernization Act of 2020, Pub. L. No. 116-260, § 226, 134 Stat. 1182, 2208.

8

irreparable harm is both speculative and sufficiently unspecific to warrant relief. Plaintiff appears to rest the showing upon a single statement by its principal, to wit: "injunctive relief is urgently needed now, as we are soon approaching our busiest online shopping season, which begins in September and runs through February. During this time, we typically realize approximately 70% of our total yearly revenue." DE 10-2 at ¶ 29. So, the thought is that imminent harm will follow because plaintiff is entering the half of the year in which plaintiff reports earning a majority of its revenue. This hardly qualifies as a showing of irreparable harm, particularly considering the evidence that defendants have been using the Pet Life name since 2018.

*Likelihood of Success on the Merits*

Additionally, plaintiff has failed to demonstrate a likelihood of success on the merits. Critical to plaintiff's showing is a demonstration of the likelihood of consumer confusion, which can turn on an evaluation of the strength of its mark,[16] one of the *Polaroid* factors employed in the Second Circuit. As the Court of Appeals recently held:

> Where a mark warrants protection under the Lanham Act, "both the likelihood of success on the merits and the potential for irreparable harm in the absence of preliminary relief may be demonstrated by a showing that a significant number of consumers are likely to be misled or confused as to the source of the products in question." *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir. 1992). To prevail in a federal trademark infringement claim, a plaintiff "must demonstrate that . . . the defendant's actions are likely to cause confusion with [that] mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020). . . . To evaluate claims of consumer confusion, this court employs the eight factors set out in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961): "[T]he strength of [the plaintiff's] mark, the degree of similarity between the two marks, the proximity of the

---

[16] It bears noting that defendants vehemently argue that "Pet Life" is "exceedingly weak" and "inherently non-distinctive." DE 23 at 7. This raises a troubling question as to why an enterprise believing these assertions would invest resources in at least three federal trademark applications seeking to protect *its* use of this mark. Should this litigative morass continue, this lurking disingenuity will be fair game for exploration.

9

> products, the likelihood that the [plaintiff] will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." *Id.* at 495. . . . Where "the determination of whether one of the *Polaroid* factors favors one party or another involves a legal judgment—which it often does— we must review that determination de novo." *Tiffany & Co.*, 971 F.3d at 86.

*RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 119 (2d Cir. 2022)(*purgandum*).

In *RiseandShine*, the Circuit reiterated the venerable techniques for evaluating the strength of a trademark, both in terms of its inherent distinctiveness as well as acquired strength in the marketplace. In that case, the Circuit ultimately reversed a preliminary injunction principally because the "district court failed to recognize the inherent weakness of Plaintiff's mark." *Id.* at 120. As the Circuit held:

> The inherent strength or weakness of a mark is frequently an important factor because strong marks command a wider scope of protection than weak marks. The trademark law allows every marketer to identify itself as a product's source by use of a distinctive mark, which will allow the public to recognize it as the source of the product, rewarding the marketer if it has earned a good public reputation and punishing it if the public's prior experience has been disappointing. In this manner, the trademark law serves the purposes of both marketers and the consuming public. So long as marketers select words or signs that have no logical relationship to the products or services on which they are used, there will never be a shortage of marks.
> Trademark law favors the use of marks that are arbitrary or fanciful in relation to the products on which they are used. This is because such distinctive marks make it easier for the public to avoid confusion and because allowing the owner a broad exclusivity for such a mark detracts little from free expression, as other marketers of similar products have no justified interest in using such words to identify their products. In contrast, trademark law offers a much narrower scope of protection to marketers who seek to bar others from using words that describe or suggest the products or the virtues of their products.

*Id.* (*purgandum*) The Circuit then reviewed the four categories of marks: (1) generic marks,

which are the common name of the product (like aspirin) and cannot be protected; (2) descriptive marks that "tell something about a product, its qualities, ingredients or characteristics" and are "presumptively unprotectable;" (3) suggestive marks which "suggest . . . the product on which they are employed, or its attributes [and] are the weakest marks that are protectable without need to show acquired secondary meaning" and (4) arbitrary and fanciful marks (like Kodak and Google) "which receive the strongest protection." *Id.* at 120-21.

In this case, using Pet Life in connection with products that arguably preserve or improve the life of one's pets falls somewhere between descriptive and suggestive. Ironically, plaintiff helps establish this assessment through its submissions: plaintiff provides a "news" article from an industry website entitled "Bringing *Life* to *Pet* Stories." DE 10-6 at 8 (emphasis added). The piece's title helps demonstrate the descriptive or suggestive nature of its asserted mark. Furthermore, plaintiff's website offers "dog accessories that will add some extra luxury to a pet's life,"[17] "smart devices designed to make your pet's life much more comfortable"[18] and "delicious treats [to] make your pet's life more exciting."[19] Thus, as employed by plaintiff—and based upon common usage—the mark appears, at best, suggestive.

"But labeling a mark as 'suggestive' is not the end of the inquiry," the Second Circuit advises. *RiseandShine*, 41 F.4th at 121. "A finding of suggestiveness does not guarantee a determination that the mark is a strong one. Because suggestive marks, by their nature, seek to suggest the qualities of the product, it can be difficult to distinguish weak suggestive marks from descriptive ones." *Id.* (*purgandum*). Thus, as in *RiseandShine,* the analysis must turn to external

---

[17] *Best Dog Accessories To Make Your Furry Friend Look Stylish*, PET LIFE, https://shop.petlife.com/blogs/news/best-dog-accessories-to-make-your-furry-friend-look-stylish (last visited September 1, 2023).
[18] *Smart Home For Pets: A Pet Owners Guide To Home Automation*, PET LIFE, https://shop.petlife.com/blogs/news/smart-home-for-pets-a-pet-owners-guide-to-home-automation (last visited September 1, 2023).
[19] *Top 7 Savory Cat Treats Your Feline Will Love*, PET LIFE, https://shop.petlife.com/blogs/news/top-7-savory-cat-treats-your-feline-will-love (last visited September 1, 2023).

11

factors to determine the level of protection that should be afforded. Just as in that case, it is undisputed that Pet Life occupies a crowded field, with numerous other contenders utilizing the words to hawk related products. *See, e.g.*, DE 24-14 (documenting similar registered marks including "Pet Life Radio," Pet Life Essentials," "Pet Life Today," "Pet Life Science," and "Pet-Life Line" and many others).

To buttress its comparatively weak mark, plaintiff attempts to demonstrate acquired strength in the marketplace. However, the evidence submitted proves a paltry showing. Plaintiff's chief contention is a conclusory assertion that it spent $2 million since 2008 promoting the brand. DE 10-2 at ¶ 10. Standing alone, this assertion fails to demonstrate acquired strength that warrants the extraordinary remedy of a preliminary injunction. *See RiseandShine*, 41 F.4th at 124 ("Notwithstanding Plaintiff's expenditure of $17.5 million in publicity, Plaintiff has not shown that its RISE mark has achieved sufficient acquired strength to counterbalance the inherent weakness of its mark.").

In sum, based on the inexplicable delay in seeking injunctive relief, the absence of demonstrated risk of irreparable injury, and deficits in the plaintiff's effort to show likelihood of success on the merits, the motion for a preliminary injunction must be denied.

*Dismissal of Plaintiff's Second Counterclaim*

As discussed above, defendants' second counterclaim proves baseless, and was filed with a flagrant lack of care and a vindictiveness redolent of bad faith. Therefore, the Court hereby dismisses said claim based upon plaintiff's motion (which was subject to a full response—such as it was—by defendants) under Rule 12.

**Conclusion**

In conclusion, the motion for preliminary relief is **DENIED** and defendants' second

counterclaim is **DISMISSED**.  Counsel would be well served to set aside their vitriol and invest their energies in an effort to constructively resolve what remains of this matter.   In that respect, counsel are DIRECTED to provide a copy of this decision to their clients, informing them of the costs and risks of continued litigation in these circumstances, and then meet and confer (involving real-time, civil conversation) to determine next steps.  Counsel shall file a joint status report within ten days of this Order.

Dated: Central Islip, New York
September  1, 2023

/s/ Gary R. Brown

GARY R. BROWN
United States District Judge